## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Marylin Báez<br>Nora Machuca, on behalf of the Estate<br>of Nora M. Sánchez<br>Mario Suárez<br>The Estate of Rosa Caballer<br>Félix Valdez Opio<br>Jorge Muñiz<br>Angel L. Colón<br>Carlos Aponte<br>Iván Collazo<br>Nélida Velázquez<br>Efraín Tosca<br>Carlos Aponte<br>Jorge González<br>Felipe González<br>Waleska Roldán<br>Nilda Padilla<br><br>**Plaintiffs**<br><br>v.<br><br>Municipality of Juncos;<br>Alfredo Alejandro, Mayor of Juncos;<br>Medelicia Peña, First Lady of Juncos,<br>and the Legal Conjugal Partnership;<br>Iris Dávila Colón<br>Jane Doe and John Roe<br>Insurance Company ABC<br><br>**Defendants** | Civil No.:<br><br><br>42 U.S.C.A. §1983<br><br><br>JURY TRIAL REQUESTED |

# C O M P L A I N T

**TO THE HONORABLE COURT:**

    **COME NOW PLAINTIFFS,** through their undersigned attorney and most respectfully STATE, ALLEGE and PRAY:

Introduction

Plaintiffs claim against the Municipality of Juncos, its Mayor Alfredo Alejandro, his wife Medelicia Peña and Iris Dávila-Colón, an employee of the municipality and others whose names are unknown at this time, for the systemic violation of their constitutionally-protected rights to privacy and property without a due process of law, and in violation of their right to equal protection under the law.

Plaintiffs are patients with chronic, life-threatening conditions, who are candidates for kidney transplants and other treatments.  They are persons of limited means.  Between 2009 and 2010, they were victims of a fraudulent scheme perpetrated by Iris Dávila and other unknown employees of the Municipality, under the guise of services to the community offered by the Municipality, the Mayor and the First Lady of Juncos.

Iris Davila and others, acting under color of law, defrauded Plaintiffs of upwards of $25,000 by promising to secure Plaintiffs' evaluations for treatments and transplants in stateside hospitals.  As part of this scheme Davila also gained access to Plaintiffs' medical records, social security numbers and other private and sensitive information, which was illegally stored in the First Lady's office at the Juncos City Hall.

Davila carried out her illegal actions out of her office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of co-workers and supervisors, and the community in general; and her alleged

work on behalf of Plaintiffs was publicized by the Mayor's office and the Office of the First Lady as part of the Administration's commitment to health issues.

As a result of the Davila's willful and illegal acts Plaintiffs, in addition to having been robbed of their money, were induced to place their hopes for medical treatment in a nonexistent project, in the process losing valuable time and resources and further endangering their health.

Despite the fact that this scheme became public some time ago and the Mayor promised to reimburse them Plaintiffs have not received any redress. Mayor Alejandro and Ms. Peña were well aware of Ms. Dávila's work with these patients.  Ms. Dávila conducted all manner of fundraising activities supposedly on behalf of Plaintiffs, directly from the First Lady's office, via official letters and faxes and appeared on television as a representative of the Municipality of Juncos.  Furthermore, the Municipality, Mayor Alejandro and Peña as political actors actively sought, and benefited from the publicity generated by their alleged efforts on behalf of renal patients.

Defendants' conduct constitutes an egregious abuse of governmental power; is shocking to the conscience of ordinary men and women, and evidence callous and reckless disregard for Plaintiffs' constitutional rights under the Constitution and laws of the U.S. and Puerto Rico.

Plaintiffs request compensatory and punitive damages for the violation of their civil rights, the deprivation of their property and liberty interests without a due process of law and their right to equal protection under the law, and the

endangerment of their health and their lives under the Constitution of the U.S. and Puerto Rico law.

## I. Jurisdictional Basis

1.  This action is brought pursuant to 42 U.S.C. §1983 for the violation of Plaintiffs' Fifth and Fourteenth Amendment rights under the Constitution of the United States and Puerto Rico; and pursuant to Article §1802 of the Puerto Rico Civil Code.  Jurisdiction is based upon 28 U.S.C.§ 1343 and the aforementioned statutory provisions.

2.  Plaintiffs further invoke the supplemental jurisdiction of this Court to hear and decide claims arising under state law, pursuant to 28 U.S.C.§1367.

3.  Venue is proper pursuant to 28 U.S.C.§1391(b), since the unlawful and negligent acts and omissions incurred by Defendants occurred within the Commonwealth of Puerto Rico.

## II.  The Parties

4.  The Municipality of Juncos is a legal entity created by the Commonwealth of Puerto Rico's Legislature with the power to sue and be sued and is a "person" for the purposes of the Civil Rights Act.

5.  Alfredo "Papo" Alejandro is the Mayor of Juncos and is being sued in his personal and official capacity, and as co-administrator of the conjugal partnership.  His intentional, negligent and illegal acts were

carried out within the scope of his work and under color of law, and as such he is responsible for the damages inflicted upon Plaintiffs.

6. Medelicia Peña is Alejandro's wife and First Lady of Juncos.  She is sued in her personal and official capacity, and as co-administrator of the conjugal partnership.  Her intentional, negligent and illegal acts were carried out within the scope of her work and under color of law, and as such she is responsible for the damages inflicted upon Plaintiffs.

7. Iris Dávila is an employee of the Municipality of Juncos. On July 28, 2011 Ms. Dávila pled guilty in criminal case no. 11-0297(DRD) to one count of mail fraud in relation to the facts that gave rise to this Complaint.  Her intentional and illegal acts were carried out within the scope of her work and under color of law, and as such she is responsible for the damages inflicted upon Plaintiffs.

8. Jane Doe and John Roe are either employees of the Municipality of Juncos or private actors, whose names are unknown at this time, whose intentional and illegal acts were carried out in concert with co-Defendants and under color of law, and as such are responsible for the damages inflicted upon Plaintiffs.

9. Marylin Báez is of legal age and a citizen of Puerto Rico residing in Juncos.  She suffers from scleroderma, a degenerative, life-threatening condition.  She spent years trying to secure an experimental stem-cell transplant, which she finally received last year.

5

10. Nora Sánchez was of legal age, a citizen of Puerto Rico residing in the Municipality of Toa Baja, and a candidate for a kidney transplant at the time of the facts relevant to this Complaint.   She passed away in January of 2011 from complications from her kidney condition, and is represented in this action by her Estate.

11. Mario Suárez is of legal age and a citizen of Puerto Rico residing in the Municipality of Coamo.  He suffers from lupus and is a candidate for a kidney transplant.

12. Rosa Caballer was of legal age, a citizen of Puerto Rico residing in the Municipality of Juncos, and a candidate for a kidney transplant at the time of the facts relevant to this Complaint.   She passed away in May of 2011 from complications from her kidney condition, and is represented in this action by her Estate.

13. Félix Valdez Opio is of legal age, and a citizen of Puerto Rico residing in the Municipality of Juncos. He is a dialysis patient and a candidate for a kidney transplant.

14. Angel L. Colón is of a legal age and a citizen of Puerto Rico residing in the Municipality of Juncos. He is a dialysis patient and a candidate for a kidney transplant.

15. Carlos Aponte is of a legal age and a citizen of Puerto Rico residing in the Municipality of Juncos. He is a dialysis patient and a candidate for a kidney transplant.

16. Iván Collazo is of a legal age and a citizen of Puerto Rico residing in the Municipality of Juncos. He is a dialysis patient and a candidate for a kidney transplant. At the time of this filing, he is hospitalized in critical condition.

17. Nélida Velázquez is of a legal age and a citizen of Puerto Rico residing in the Municipality of Juncos. She is a dialysis patient and a candidate for a kidney transplant.

18. Efraín Tosca is of a legal age and a citizen of Puerto Rico residing in the Municipality of Juncos. He is a dialysis patient and a candidate for a kidney transplant.

19. Carlos Aponte is of a legal age and a citizen of Puerto Rico residing in the Municipality of Juncos. He is a dialysis patient and a candidate for a kidney transplant.

20. Jorge González is of a legal age and a citizen of Puerto Rico residing in the Municipality of Juncos. He is a dialysis patient and a candidate for a kidney transplant.  At the time of this filing, he is hospitalized in critical condition.

21. Felipe González is of a legal age and a citizen of Puerto Rico residing in the Municipality of Coamo. He is a dialysis patient and a candidate for a kidney transplant.

22. Waleska Roldán is of legal age and a citizen of Puerto Rico residing in the Municipality of Jayuya.  She suffers from scleroderma and is a candidate for an experimental stem-cell transplant.

23. Nilda Padilla is of legal age of a legal age and a citizen of Puerto Rico residing in the Municipality of Juncos. She is a dialysis patient and a candidate for a kidney transplant.

## III. The Facts

Facts Common to all Plaintiffs and Causes of Action

24. The Municipality of Juncos is a legal entity created by the Commonwealth of Puerto Rico's Legislature with the power to sue and be sued and is a "person" for the purposes of the Civil Rights Act.

25. Defendant Alfredo "Papo" Alejandro is the Mayor of Juncos and Chief Executive Officer of the municipality, and a "person" for the purposes of the Civil Rights Act.  Alejandro is responsible for the day-to-day operations of the Municipality of Juncos, and supervises, either directly or indirectly, all municipal operations.

26. Defendant Medelicia Peña is upon information and belief, employed by the Municipality of Juncos and/or receives funds from the Municipality and/or operates the "Office of the First Lady" within the Juncos City Hall.  She supervises, directly or indirectly, the operations of said Office and its employees.

27. Defendant Iris Davila is an employee of the Municipality of Juncos who at the time of the facts relevant to this action was assigned to the Office of the First Lady of Juncos as coordinator of a project variously

known as "Juncos al Dia con la Salud", and/or "Oficina de Servicio al Ciudadano".

28.    Upon information and belief Mrs. Dávila was hired for this position based in part or in whole because of a personal relationship with the Mayor and Ms. Peña, and because she had previous experience raising funds for the treatment of her late father, who was a renal patient.

29.    Upon information and belief Mrs. Dávila, in concert with other actors, executed the events that led to the constitutional violations claimed in this Complaint, under color of law and in order to intentionally deprive the Plaintiffs of their constitutional rights and property.

30.    Plaintiffs' privacy rights were also violated as part of the illegal and unconscionable scheme perpetrated by Defendants, who gathered copies of their medical records, social security numbers and birth certificates for illegal purposes.  Some of these documents were later recovered by the Plaintiffs themselves from the Office of the First Lady, where they were stored in a haphazard and careless manner.

31.    Defendants' actions were taken pursuant to the Municipality of Juncos's policy of providing services and assistance to its citizens in the area of disease treatment and prevention, and to Alejandro's and Peña's policy of providing assistance to renal patients in particular.

32.    Defendants unlawfully targeted Plaintiffs among similarly-situated persons, because of their disabilities, their desperate need for medical

treatment and their precarious economic situation, in violation of their constitutionally protected right to equal protection under the law.

33.     Upon information and belief, Dávila's outreach to patients suffering from renal failure was used by the Municipality of Juncos, the Mayor and the First Lady as a hook to obtain funds from private institutions and persons to carry out health awareness clinics and other activities as part of the Municipality's services to its constituency.

34.     Defendant Alejandro is liable to Plaintiffs in his individual capacity as Mayor and CEO of the Municipality, for promoting a policy that targeted Plaintiffs because of their disability without putting in place adequate procedures for providing services; for failing to protect sick and needy citizens such as Plaintiffs from the abuse of municipal employees such as Dávila; and for failing to adequately hire, supervise, train and discipline employees such as Davila, who provide direct services to the population.

35.     Defendant Medelicia Peña is liable to Plaintiffs in her individual capacity as First Lady of the Municipality, for promoting a policy that targeted Plaintiffs because of their disability without putting in place adequate procedures for providing services; for failing to protect sick and needy citizens such as Plaintiffs from the abuse of municipal employees such as Dávila; and for failing to adequately hire, supervise, train and discipline employees such as Davila, who provide direct services to the population through her office.

36.   Defendants Alejandro and Peña and the Municipality of Juncos are further liable for failing to provide any remedies to Plaintiffs after learning that they were deprived of their property and privacy at the hands of municipal employees acting pursuant to the Municipality's policy and custom of offering assistance and services to citizens such as Plaintiffs.

37.   Defendants acted knowingly, intentionally, willfully, wantonly, and/or negligently and with reckless disregard for Plaintiff's rights.

38.   Defendants' actions and omissions shock the conscience of ordinary men and women and constitute a violation of Plaintiff's right to substantive and procedural due process of law.

39.   Defendants' actions against Plaintiffs constitute an arbitrary and capricious state action that shocks the conscience and violate elemental standards of human decency.

40.   At the time of these events, Defendants' conduct violated clearly established law and the rights of the Plaintiffs, pursuant to the U.S. Constitution and federal statutes, the Constitution and laws of Puerto Rico and relevant case law.

Facts Related to Marylin Báez

41.   Mrs. Baez suffers from a condition known as "Systemic Diffuse Scleroderma", and needs a stem cell transplant in order to treat her condition.   This is an experimental procedure that costs upwards of

$300,000, and Mrs. Baez was denied coverage under her private medical plan.

42.   Througout 2009 and 2010, Mrs. Báez and her husband made all manner of efforts to secure funding for her treatment, since her condition attacks and eventually shuts down vital organs.  At that time, her gastrointestinal system was already compromised, and she could not digest solid food.

43.   In the summer of 2009, Mrs. Baez learned that the Office of Assistance to Citizens of the Municipality of Juncos was providing assistance to transplant candidates such as herself.  She met Mrs. Iris Davila in the Juncos City Hall.  During their first meeting, Mrs. Davila required copy of all documents related to her condition, medical records, social security card, driver's license, birth certificate, evidence of medical plan and utilities bills.  Davila told Mrs. Baez that she would arrange for transplant evaluation and treatment at Duke Clinic in North Carolina.

44.   In August of 2009, Davila called Mrs. Baez and told her that she was seeking a review of her medical plan's denial of benefits through the Office of the "Procuradora del Paciente", and that she needed a money order in the amount of $81.90 in order to process her request.  Mrs. Baez's husband Elias Gomez purchased the money order and gave it to Mrs. Davila at her office in the Juncos City Hall.  Later Davila sent them a copy of the money order, which appeared to be payable to the Office of the Procuradora del Paciente.

45.   In September of 2009, Davila told Baez that in order for her case to be processed at the Duke Clinic, she needed to make some payments and requested money orders in the amounts of $106.90, $452.00 and $390.00.  Once again Baez's husband Elias Gomez purchased the money orders and gave them to Mrs. Davila at her office in the Juncos City Hall.

46.   Later in September Baez made out three (3) more money orders, two (2) in the amount of $500 and one (1) for $1,000.   Baez's husband Elias Gomez purchased the money orders and gave them to Mrs. Davila at her office in the Juncos City Hall.

47.   Davila then told Baez that she was working with the National Institute of Health and Duke Clinic for review of her case, that their "protocol" required a deposit of $5,600.  Davila gave Baez copy of a document that appeared to be from the National Health Institute. Between October and November of 2009, Davila required three (3) money orders for $1,000 each, and one for $459.90.  Baez gave them to her at the Office of the First Lady in the Juncos City Hall, and Davila gave him copies of the money orders made out to "Duke Clinic", and copy of a fax she sent from the Office of the First Lady to Duke Clinic on official stationery.

48.   Davila also told Mrs. Baez that she would do some fundraising on her behalf, and published a fundraising letter on official stationery from the Office of the First Lady, subscribed by Davila as "Coordinator of

Special Illnesses" for the Municipality.  Baez did not receive any funds from this campaign.

49.  Dávila was interviewed by Channel 4 (WAPA TV) reporters for a news segment called "Para Que Conste", which highlighted Ms. Báez's case and appealed to the public for donations to cover the cost of her treatment.  In this segment, which aired throughout Puerto Rico as part of Channel 4's news, Ms. Davila was videotaped at her office at the Juncos City Hall, and identified as the person in charge of the Municipality's program "Asistencia al Ciudadano".

50.  On two ocassions, Dávila took Báez and her husband to the offices of a Senator to plead her case for funds.  It is not known if this Senator, or the Senate, made a contribution.

51.  All of the transactions between Dávila and Baez's husband, when he went to give Dávila the money orders she requested, were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors including co-Defendants' Alejandro and Peña.

52.  Dávila would receive the money orders in the presence of municipality employees, including the First Lady's secretary, and would produce fraudulent receipts using the municipality's photocopiers and paper.

53. In or around June of 2010, Ms. Baez learned that Mrs. Dávila had no connection with the Duke Clinic, and that she was not authorized by that hospital to collect any money on its behalf.

54. Ms. Baez further learned that Mrs. Davila cashed in all the money orders, in the amount of over $6,000.

55. Ms Báez requested the copy of her medical record be returned. It was eventually retrieved from the First Lady's office and returned to her by the Vice-Mayor of Juncos.

Facts Related to Nora Sánchez

56. Ms. Machuca was a young dialysis patient and a candidate for a kidney transplant.

57. Ms. Sánchez's mother, Nora Machuca contacted Davila after learning through the press of the Juncos Municipality's program to assist renal patients. She gave Dávila copies of Nora's medical records, social security, birth certificate and evidence of private health plan, and payments that totaled $3,000. Per Davila's instructions, all payments were made in money orders left blank.

58. Because Ms. Machuca could not travel to Juncos, she and Davila communicated and exchanged documents through fax. Machuca received several faxes on official Juncos Municipality stationery, requesting she filled out documents allegedly required by Mayo Clinic.

59. In June of 2010 Ms. Machuca learned of Davila's fraudulent scheme. All of the money orders were eventually cashed in by Davila.

60.  Ms. Machuca was not able to obtain the transplant she needed. She passed away in January of 2011.

Facts Related to Mario Suárez

61.  Mr. Sánchez suffers from Lupus, receives dialysis and is a candidate for a kidney transplant.

62.  In 2010, he had contacted with the Mayo Clinic in Jacksonville, Florida in order to be evaluated for a possible transplant operation.  Sometime in March or April of that year, he received a call from Iris Dávila, who identified herself as Secretary to the First Lady of Juncos.  Ms. Dávila told him she could help him expedite the process with the Mayo Clinic, and asked him to come to her office in the Juncos City Hall.

63.  Mr. Suarez traveled to Juncos on various occasions and met with Davila at her office at the City Hall.  Davila told him he needed to make payments to the Mayo Clinic as part of the "protocol", and that if he failed to pay in advance, Mayo Clinic would charge him several thousand dollars.

64.  Between April and May of 2010, Suarez gave Davila money orders in the amounts of $500, $182, $90 and $211.  All the payments were made at Davila's City Hall office. Suarez also gave Davila copy of his medical records.

65.  In May of 2010, Suarez was summoned to the office of the First Lady in order to receive a letter from the Mayo Clinic confirming his appointment for an evaluation.  Suarez received this letter from Ms.

Medelicia Peña herself, and was photographed with her in her office. This photo was later published as part of the Mayor's publicity regarding his administration's work on behalf of dialysis patients.

66.    Between July and August of 2010, Mr. Suárez received approximately three phone calls from the First Lady, who told him she was interested in having him participate as spokesperson for the "Oficina de Ayuda al Ciudadano."

67.    All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors, including co-Defendants' Alejandro and Peña.  Mr. Suárez gave Dávila the money orders she requested at her City Hall office, and there she produced fraudulent receipts using the municipality's paper and photocopiers. She also produced a phony letter from the Mayo Clinic in Jacksonville, Florida to Mr. Suárez using Municipality resources.

68.    In June of 2011 Suárez learned of Davila's fraudulent scheme.  All of the money orders were eventually cashed in by Davila.

Facts Related to Rosa Caballer

69.    Ms. Caballer was a dialysis patient in need of a kidney transplant.

70.    In April of 2010, Iris Davila approached her to tell her that the Office of the First Lady of Juncos could give her assistance in getting her transplant at the Mayo Clinic in Florida.

71.    At Davila's request she gave her copy of her medical records and made several payments, which totaled $1,621.20.  All payments were made by money orders which were eventually cashed in by Davila.

72.    Davila published a letter in official stationery from the Municipality of Juncos to raise funds for Caballer's treatment.  Caballer did not receive any money from this fundraising.

73.    All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors including co-Defendants' Alejandro and Peña.   Ms. Caballer gave Dávila the money orders she requested at her City Hall office, and there she produced fraudulent receipts using the municipality's paper and photocopiers.

74.    In June of 2010, Ms. Caballer was told by personnel at the Mayo Clinic that the hospital did not charge for its services, and that Davila was not authorized by the Hospital to collect any money on its behalf.

75.    Ms. Caballer was not able to receive a transplant.  She passed away in May of 2011.

Facts Related to Felix Valdez Opio

76.    Mr. Valdez is a dialysis patient and a candidate for a kidney transplant.

77.    Early in 2010, Mr. Valdez Opio learned that the Municipality of Juncos was offering assistance to renal patients through its Office of the First Lady.

78.    Mr. Valdez went in person to the Office of the First Lady, where he was received by Defendant Iris Dávila.  Mrs. Dávila told him that she was a liaison between the Municipality and patients such as himself, to help them procure transplants and other medical services in stateside hospitals.

79.    Mrs. Davila instructed Mr. Valdez to fill out some papers and give her copy of his medical record, Medicare and private plan cards, and told him she would arrange for him to be evaluated for a transplant at the Mayo Clinic in Jacksonville, Florida.   She further instructed him to purchase money orders in an amount totaling approximately $2,500 which she said was the "deductible" to be paid to the Mayo Clinic. Mrs. Davila also told him that since he did not speak English, she would fill out the money orders and paperwork and send them to the hospital.

80.    All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors including co-Defendants' Alejandro and Peña.

81.    Some of the paperwork Mrs. Davila presented to Mr. Valdez appeared to be from the Mayo Clinic, and some were official documents from the Municipality of Juncos's Office of the First Lady and/or Office of Community Services ("Oficina de Asuntos del Ciudadano.")

82. In or around June of 2010, Mr. Valdez learned that Mrs. Dávila was not authorized by the Mayo Clinic to collect any money on its behalf.

83. Mr. Valdez further learned that Mrs. Davila cashed in the money orders, in the amounts of $500, $145, $90, $89, $210, $112, $185, $51, $121, $278, $277.08, $142 and $58.92.

Facts Related to Angel L. Colón

84. Angel L. Colon is a dialysis patient in need of a kidney transplant.

85. Early in 2010, Colon's wife Mirta Molina received a phone call from Iris Davila, who identified herself as an employee of the Juncos Municipality's Office of the First lady and offered assistance in coordinating the transplant in a stateside hospital.

86. Mrs. Davila required copy of Mr. Colon's entire medical record, evidence of private medical plan, driver's license and social security card in order to process a request for treatment at the Mayo Clinic in Jacksonville, Florida.

87. Davila also required, and obtained an initial payment of $500. Davila made several other requests for money, which Colon could not comply with, since he did not have the money.

88. All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors, including co-Defendants' Alejandro and Peña. Mr. Colón

gave Dávila the money orders she requested at her City Hall office, and there she produced fraudulent receipts using the municipality's paper and photocopiers.

89.     In or around June of 2010, Mr Colon learned that Mrs. Dávila had no connection with the Mayo Clinic, and that she was not authorized by that hospital to collect any money on its behalf.

90.     Mr. Colon further learned that Mrs. Davila cashed in the money order for $500.


Facts Related to Iván Collazo

91.     Ivan Collazo is a dialysis patient in need of a kidney transplant.

92.     Towards the end of 2009, Iris Davila approached him and told him she could offer assistance with the Mayo Clinic in Florida through the Office of the First Lady of Juncos.

93.     Mr. Collazo met with Davila at her office in the Juncos City Hall, where she requested copy of his medical record, social security and birth certificate.  She also requested $500, which she told him was to be paid to the hospital to begin the process.

94.     In total, Mr. Collazo gave Davila 2 money orders, for $500 and $52.98 at her request.  Both were eventually cashed in by Davila.

95.     All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and

supervisors including co-Defendants' Alejandro and Peña.  Mr. Collazo gave Dávila the money orders she requested at her City Hall office, and there she produced fraudulent receipts using the municipality's paper and photocopiers

96.     In June of 2010 Mr. Collazo traveled to the Mayo Clinic, where he found out that the hospital did not charge for its services, and that Davila was not authorized by the Hospital to collect any money on its behalf.


Facts Related to Efraín Tosca

97.     Efraín Tosca is a dialysis patient in need of a kidney transplant.

98.     In December of 2009, Iris Davila visited him at his home to tell him that the Office of the First Lady of Juncos could give him assistance in getting his transplant at the Mayo Clinic in Florida.

99.     Davila requested copy of his medical record and $650.00, which he paid.  Between January and May of 2010, Davila requested and Tosca gave her money orders for $250, $91, $53 and $42.  All payments were made at Davila's office at the Juncos City Hall, and were later cashed in by Davila.

100.    In April of 2010, the Office of the First Lady published a flier announcing that it had arranged for Mr. Tosca's evaluation and transplant at Mayo Clinic through its "transplant coordination project."

101.   All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors, including co-Defendants' Alejandro and Peña.   Mr. Tosca gave Dávila the money orders she requested at her City Hall office, and there she produced fraudulent receipts using the municipality's paper and photocopiers.

102.   In June of 2010, Mr. Tosca traveled to the Mayo Clinic, where he found out that the hospital did not charge for its services, and that Davila was not authorized by the Hospital to collect any money on its behalf.

Facts Related to Jorge González

103.   Mr. González is a dialysis patient in need of a kidney transplant.

104.   In early 2010 he was told that the Juncos Municipality's Office of the First Lady was helping transplant candidates such as himself to arrange for treatment.   Gonzalez and his wife made an appointment with Davila at her office in Juncos City Hall, where she told them they needed to pay $500 in order to initiate the process with the Mayo Clinic in Florida.

105.   A few days later, Davila, identifying herself as "transplant coordinator" and Secretary to the First Lady, began calling around to Gonzalez's relatives in order to collect the $500.   When told of this, Gonzalez's wife called Davila at her office.   Davila told her that she would make a concession in their case and pay the $500 fee with her credit card, and

that they should reimburse her in cash, which they did.  Subsequently they made payments to Davila of $672.90 and $133 in money orders, which Davila cashed in.  Following Davila's instructions, they bought plane tickets for Florida to attend the appointment she had supposedly arranged, for which they paid $838.00.

106.   Davila also gave Gonzalez's wife a fundraising letter printed on official stationery of the Municipality of Juncos and instructed her to use it to raise funds for Mr. Gonzalez's treatment.

107.   All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors.  Gonzalez and his wife gave Dávila the money orders she requested at her City Hall office, and there she produced fraudulent receipts using the municipality's paper and photocopiers.  She also produced phony letters from stateside hospitals using Municipality resources.

108.   On June 18, 2010 Davila called them and told them that they would be getting their money back, since there was an agreement with the "Catastrophic Illness" fund at the Department of Health. On June 25, 2010 the couple went to Davila's office at the Juncos City Hall, where they filled out a document authorizing direct deposits to their account for the reimbursement.  To date, they have received 2 payments, in the amounts of $500 and $250.

Facts Related to Jorge Muñiz

109.  Mr. Muñiz is a dialysis patient in need of a kidney transplant.

110.  He was told at the clinic where he receives treatment, that the First
      Lady of Juncos had a program in her office to assist renal patients.  He
      went to Davila's office in April of 2010, and made payments to her
      totaling $999, in money orders which Davila later cashed in, as well as
      copies of his medical records.

111.  All of the transactions were performed in plain view in Mrs. Davila's
      office in the Juncos City Hall, utilizing the Municipality's resources and
      equipment and with the knowledge of Mrs. Davila's co-workers and
      supervisors including co-Defendants' Alejandro and Peña. Mr. Muñizr
      gave Dávila the money orders she requested at her City Hall office,
      and there she produced fraudulent receipts using the municipality's
      paper and photocopiers.

112.  In June of 2010, he found out through other patients of Davila's
      fraudulent scheme.  On June 25, Davila called him and had him go to
      her office at Juncos City Hall to sign a document so he could get
      reimbursed.  To date, he has received no payments.

Facts Related to Carlos Aponte

113.  Mr. Aponte is a dialysis patient in need of a kidney transplant.

114.    Iris Dávila told his wife about Juncos's transplant program, and assured her that he would qualify for a transplant at the Mayo Clinic in 3 to 5 months, because "everyone qualifies theres."   She then requested copies of medical records, social security, evidence of private health plan, birth certificate, and checking account.

115.    Some time later, Davila called them and told them that Mr. Aponte's "protocol" had arrived from the Mayo Clinic, and that they had to make certain payments in a hurry because they were giving out appointment dates.   Per her instructions, Aponte's wife gave her money orders in the amounts of $500, $123, $45, $900, $250 (2), $500 and $187.

116.    On May 30, 2010 Aponte's relatives held a fundraising for his transplant which they believed was imminent. Davila attended the event in her capacity as coordinator of the First Lady's "transplant coordination office" and handed Aponte what was allegedly his appointment at the Mayo Clinic on August 12, 2010.   She then requested and received several other payments, in the amounts of $30, $10, $39, $69, $50, $12 and $18.   All payments were made in money orders, which were cashed in by Davila.

117.    All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors including co-Defendants' Alejandro and Peña. Mr. Aponte gave Dávila the money orders she requested at her City Hall office,

and there she produced fraudulent receipts using the municipality's paper and photocopiers. She also produced phony letters from stateside hospitals using Municipality resources.

118. Aponte then received a call from the Mayo Clinic warning him of Davila's scheme. His wife confronted Davila at her office at Juncos City Hall, where she tried to get her to sign a document so she could get their money back. Eventually Davila sent them personal money orders in the amount of $2,000.

Facts Related to Nélida Velázquez

119. Ms. Velázquez is a dialysis patient in need of a kidney transplant.

120. She was approached by Iris Davila in December of 2009, with the offer to help her secure a transplant through the Office of the First Lady of Juncos. She requested copy of her medical records, social security, evidence of private health plan, and payments to cover the "protocol" that Mayo Clinic allegedly required.

121. Between December 2009 and April 2010, Velázquez gave Davila money orders in the amounts of $500, $150 (2), $250, $52, $63, $98, $111 and $42, $399 and $542, for a total of $2,132. Per her instructions she left the money orders blank, and later received "copy" of them made out to the Mayo Clinic.

122. All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and

supervisors including co-Defendants' Alejandro and Peña.   Ms. Velázquez's daughter gave Dávila the money orders she requested at her City Hall office, and there she produced fraudulent receipts using the municipality's paper and photocopiers. She also produced phony letters from stateside hospitals using Municipality resources.

123.   In June of 2010 Ms. Velázquez learned of Davila's fraudulent scheme. All of the money orders were eventually cashed in by Davila.

Facts Related to Felipe González

124.    Mr. González is a dialysis patient in need of a kidney transplant.

125.   Mr. González, a resident of Coamo, Puerto Rico, learned of the Juncos Municipality's program to assist renal patients through the pastor of his church.   He and his wife traveled to Juncos and met Davila at her office.   She requested copy of his medical records, social security, evidence of private health plan and informed him he would have to make some payments to initiate the process with the Mayo Clinic.

126.   As instructed by Davila, he traveled to Juncos on several occasions to giver her money orders that totaled $1,308. Per her instructions, they were left blank.  Eventually they were cashed in by Davila.

127.   All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors including co-Defendants' Alejandro and Peña.

128. After Davila's scheme became known, Gonzalez received two (2) money orders totaling $290.

Facts Related to Waleska Roldán

129. Ms. Roldán suffers from a condition known as Scleroderma, and is a candidate for an experimental stem-cell transplant.

130. She learned about the Juncos Municipality's program to assist patients through co-Plaintiff Marylin Báez.

131. Ms. Roldán met Dávila at the Juncos City Hall and gave her a money order for $500, as instructed by Davila in order to cover the alleged "protocol" for evaluation at the Mayo Clinic.  Ms. Roldán also gave copy of her medical records to Ms. Dávila.

132. All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors, including co-Defendants' Alejandro and Peña.   Ms. Roldán gave Dávila the money orders she requested at her City Hall office, and there she produced fraudulent receipts using the municipality's paper and photocopiers. She also produced phony letters from stateside hospitals using Municipality resources.

133. Ms. Dávila also referred Ms. Roldán to a naturopathic physician (Dr. Edwin Rodriguez) in Juncos, who prescribed pills for her that would allegedly help her condition.  Ms. Roldan visited Dr. Rodriguez's office approximately 18 times during the year 2010.

134.    In June of 2011 Suarez learned of Davila's fraudulent scheme.   The money orders were eventually cashed in by Davila.

Facts Related to Nilda Padilla

135.    Ms. Padilla is a dialysis patient in need of a kidney transplant.

136.    She was approached by Iris Davila in late 2009 with the offer to help her secure a transplant through the Office of the First Lady of Juncos. She requested copy of her medical records, social security, evidence of private health plan, and payments to cover the "protocol" that Mayo Clinic allegedly required.

137.    Between December April and May of 2010, Padilla gave Davila money orders in the amounts of $605, $500 and $376.10.   Per Davila's instructions she left the money orders blank, and later received "copy" of them made out to the Mayo Clinic.

138.    All of the transactions were performed in plain view in Mrs. Davila's office in the Juncos City Hall, utilizing the Municipality's resources and equipment and with the knowledge of Mrs. Davila's co-workers and supervisors including co-Defendants' Alejandro and Peña.  Ms. Padilla gave Dávila the money orders she requested at her City Hall office, and there she produced fraudulent receipts using the municipality's paper and photocopiers. She also produced phony letters from stateside hospitals using Municipality resources.

139.   In June of 2010 Ms. Padilla learned of Davila's fraudulent scheme.  All of the money orders were eventually cashed in by Davila.

**FIRST CAUSE OF ACTION**

Deprivation of Property without Due Process of Law

140.   The foregoing allegations are repeated and alleged herein.

141.   Defendant Iris Dávila acted under color of law with callous and reckless disregard for Plaintiff's rights, and engaged in conduct that shocks the conscience, by the unlawful appropriation of Plaintiffs' money under the pretense that they were paying for access to health care and treatment.   Dávila's conduct constitutes a deprivation of Plaintiffs' property without a due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, and Article II, Section 7 of the Constitution of Puerto Rico.

142.   Defendant Municipality of Juncos acted with deliberate indifference to the constitutionally protected rights of Plaintiffs, by maintaining a policy of offering services and assistance to the community at large, and to needy, low-income and ill persons in particular, without having adequate procedures in place to carry out such services.   The Municipality's acts and omissions resulted in the deprivation of Plaintiff's property without a due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, and Article II, Section 7 of the Constitution of Puerto Rico.

143.   Defendants Alfredo "Papo" Alejandro and Medilicia Peña acted under color of law with deliberate indifference and reckless disregard for the constitutionally protected rights of Plaintiffs, by promoting a policy of offering services and assistance to the community at large, and to needy, low-income and ill persons in particular, without having adequate procedures in place to carry out such services.  Their acts and omissions resulted in the deprivation of Plaintiff's property without a due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, and Article II, Section 7 of the Constitution of Puerto Rico.

144.   As a direct result of Defendant's unconscionable and illegal acts, Plaintiffs suffered and continue to suffer economic losses, severe mental anguish, psychological and emotional distress and physical pain and suffering, some or all of which may be permanent.


**SECOND CAUSE OF ACTION**

Deprivation of Constitutional Right to Property

145.   The foregoing allegations are repeated and alleged herein.

146.   Defendant Iris Dávila's unlawful, arbitrary and capricious deprivation of Plaintiffs' property under color of law constitutes an egregious abuse of governmental power in violation of Plaintiff's substantive property rights under the Fifth Amendment to the United States Constitution, and Article II, Section 7 of the Constitution of Puerto Rico.

147.   Defendant Municipality of Juncos acted with deliberate indifference to the constitutionally protected rights of Plaintiffs, by maintaining a policy of offering services and assistance to the community at large, and to needy, low-income and ill persons in particular, without having adequate procedures in place to carry out such services. The Municipality's acts and omissions resulted in an egregious abuse of governmental power; and the arbitrary and capricious deprivation of Plaintiff's substantive property rights under the Fifth Amendment to the United States Constitution, and Article II, Section 7 of the Constitution of Puerto Rico.

148.   Defendants Alfredo "Papo" Alejandro and Medilicia Peña acted under color of law with deliberate indifference and reckless disregard for the constitutionally protected rights of Plaintiffs, by promoting a policy of offering services and assistance to the community at large, and to needy, low-income and ill persons in particular, without having adequate procedures in place to carry out such services.  Their acts and omissions resulted in an egregious abuse of governmental power; and the arbitrary and capricious deprivation of Plaintiff's substantive property rights under the Fifth Amendment to the United States Constitution, and Article II, Section 7 of the Constitution of Puerto Rico.

149.   As a direct result of Defendants' unconscionable and illegal acts, Plaintiffs suffered and continue to suffer economic losses, severe

mental anguish, psychological and emotional distress and physical pain and suffering, some or all of which may be permanent.

### THIRD CAUSE OF ACTION

Deprivation of liberty without a due process of law

**150.** The foregoing allegations are repeated and alleged herein.

**151.** Defendants Iris Dávila acted under color of law with callous and reckless disregard, malice and bad faith and engaged in conduct that shocks the conscience, by unlawfully gaining access to Plaintiff's medical records, social security numbers and birth certificates under the pretense that they were needed to secure medical treatment.

152. Plaintiffs have a constitutionally and statutorily protected right to privacy as to the information contained in their medical records and documents. Dávilas' conduct constitutes a deprivation of Plaintiff's liberty interests without a due process of law under the Ninth and Fourteenth Amendments to the United States Constitution; Sections One, Seven and Eight of the Constitution of Puerto Rico; and the applicable federal and state statutes, including but not limited to the HIPPAA.

153. Defendant Municipality of Juncos acted with deliberate indifference to the constitutionally protected rights of Plaintiffs, by maintaining a policy of offering services and assistance to the community at large, and to needy, low-income and ill persons in particular, without having adequate procedures in place to carry out such services. The

Municipality's acts and omissions resulted in the deprivation of Plaintiff's liberty interests without a due process of law under the Fifth, Ninth and Fourteenth Amendments to the United States Constitution, and Article II, Section 7 of the Constitution of Puerto Rico.

154. Defendants Alfredo "Papo" Alejandro and Medilicia Peña acted under color of law with deliberate indifference and reckless disregard for the constitutionally protected rights of Plaintiffs, by promoting a policy of offering services and assistance to the community at large, and to needy, low-income and ill persons in particular, without having adequate procedures in place to carry out such services.  Their  acts and omissions resulted in the deprivation of Plaintiff's liberty interests without a due process of law under the Fifth, Ninth and Fourteenth Amendments to the United States Constitution, and Article II, Section 7 of the Constitution of Puerto Rico.

155. As a direct result of Defendant's unconscionable and illegal acts, Plaintiffs suffered and continue to suffer economic losses, severe mental anguish, psychological and emotional distress and anxiety, some or all of which may be permanent.

**FOURTH CAUSE OF ACTION**

Deprivation of Constitutional Right to Privacy

156. The foregoing allegations are repeated and alleged herein.

157. Defendant Iris Dávila acted under color of law with callous and reckless disregard, malice and bad faith and engaged in conduct that

shocks the conscience, by unlawfully gaining access to Plaintiffs' medical records, social security numbers and birth certificates under the pretense that they were needed to secure medical treatment. Dávilas conduct constitutes a violation of Plaintiffs' fundamental right to privacy under the Fifth and Ninth Amendment to the United States Constitution and applicable case law; and Sections One, Seven and Eight of the Constitution of Puerto Rico.

158. Defendant Municipality of Juncos acted with deliberate indifference and reckless disregard for the constitutionally protected rights of Plaintiffs, by maintaining a policy of offering services and assistance to the community at large, and to needy, low-income and ill persons in particular, without having adequate procedures in place to carry out such services and without properly supervising its employees. The Municipality's acts and omissions resulted in an egregious abuse of governmental power; and the arbitrary and capricious deprivation of Plaintiffs' substantive right to privacy under the Fifth and Ninth Amendments to the United States Constitution, and Article II, Section 7 of the Constitution of Puerto Rico.

159. Defendants Alfredo "Papo" Alejandro and Medilicia Peña acted under color of law with deliberate indifference and reckless disregard for the constitutionally protected rights of Plaintiffs, by promoting a policy of offering services and assistance to the community at large, and to needy, low-income and ill persons in particular, without having

adequate procedures in place to carry out such services.  Their acts and omissions resulted in an egregious abuse of governmental power; and the arbitrary and capricious deprivation of Plaintiffs' substantive right to privacy under the Fifth and Ninth Amendments to the United States Constitution; Article II, Sections 1, 7 and 8 of the Constitution of Puerto Rico; federal and state statutes.

160.  As a direct result of Defendants' unconscionable and illegal acts, Plaintiffs suffered and continue to suffer economic losses, severe mental anguish, psychological and emotional distress and anxiety, some or all of which may be permanent.

## FIFTH CAUSE OF ACTION

Equal Protection under the Law

161.  The foregoing allegations are repeated and alleged herein.

**162.**  Defendant Iris Dávila acted under color of law with the intent to discriminate against Plaintiffs because of their disability, in order to deprive them of their constitutionally-protected rights.  Dávila specifically preyed upon Plaintiffs because she knew of their disability, their ill state of health and their urgent need for medical treatment. Davila's conduct constitutes a deprivation of Plaintiffs' right to equal protection under the law and to be free from discrimination for reason of their disability on the part of persons acting under color of law, pursuant to the Fourteenth Amendment of the United States, and Sections 1, 7 and 8 of the Constitution of Puerto Rico.

163. Defendant Municipality of Juncos acted with deliberate indifference and reckless disregard for the constitutionally protected rights of Plaintiffs and with the intent to discriminate, by maintaining a policy of offering services and assistance to disabled persons and to renal patients in particular without having adequate procedures in place to carry out such services. The Municipality's acts and omissions constitute a deprivation of Plaintiffs' right to equal protection under the law and to be free from discrimination for reason of their disability on the part of persons acting under color of law, pursuant to the Fourteenth Amendment of the United States, and Sections 1, 7 and 8 of the Constitution of Puerto Rico.

164. Defendants Alfredo "Papo" Alejandro and Medilicia Peña acted under color of law with deliberate indifference and reckless disregard for the constitutionally protected rights of Plaintiffs and with the intent to discriminate, by promoting a policy of offering services and assistance to disabled persons and to renal patients in particular, without having adequate procedures in place to carry out such services.  Their acts and omissions constitute a deprivation of Plaintiffs' right to equal protection under the law and to be free from discrimination for reason of their disability on the part of persons acting under color of law,, pursuant to the Fourteenth Amendment of the United States, and Sections 1, 7 and 8 of the Constitution of Puerto Rico.

165. As a direct result of Defendants' unconscionable and illegal acts, Plaintiffs suffered and continue to suffer economic losses, severe mental anguish, psychological and emotional distress and anxiety, some or all of which may be permanent.

## SIXTH CAUSE OF ACTION

<u>Supervisory Liability</u>

**166.** The foregoing allegations are repeated and alleged herein.

167. Defendants Alfredo Alejandro and Medelicia Peña are liable to Plaintiffs for implementing policies within the Municipality that promoted the illegal and unconscionable conduct herein described; for failing to protect ill and vulnerable citizens such as Plaintiffs from the abuse of municipal employees such as Davila; for not providing training or adequately training municipal employees under their supervision; for the negligent hiring of unqualified and unscrupulous employees to carry out such policies; and for failing to discipline or adequately discipline the municipal employees involved once they learned of their illegal and unconscionable actions against Plaintiffs; all of which resulted in the violation of Plaintiffs' constitutionally-protected rights to property and liberty.

168. As a direct result of these Defendant's unconscionable and illegal acts, Plaintiffs suffered and continue to suffer economic losses, severe mental anguish, psychological and emotional distress and anxiety, and physical pain and suffering some or all of which may be permanent.

### SEVENTH CAUSE OF ACTION

169. The foregoing allegations are repeated and alleged herein.

170. This cause of action arises out of the Puerto Rico Constitution. Defendants, individually and through its agents and employees, violated Plaintiffs' rights under Article II, Section 1 (Prohibition against discrimination on the basis of social status); Section 7 (Guaranteeing right to life, liberty and property, and a due process of law; exemption of property from attachment);   and Section 8 (Prohibition against attacks against the honor, reputation and privacy).

171. As a direct result of Defendant's unconscionable and illegal acts, Plaintiffs suffered and continue to suffer economic losses, severe mental anguish, psychological and emotional distress and anxiety, and physical pain and suffering some or all of which may be permanent.

### EIGTH CAUSE OF ACTION

172. The foregoing allegations are repeated and alleged herein.

173. This cause of actions arises from Puerto Rico's general tort statutes. Defendants' acts and omissions herein described constitute outrageous conduct, negligence, intentional infliction of emotional distress, negligent hiring retention and supervision, illegal appropriation and violation of privacy, all of which are actionable pursuant to 31 L.P.R.A. Sections 1802 and 1803.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request the following relief:

a.      Compensatory damages in an amount of no less than $10,000,000;

b.   Punitive damages in an amount of no less than $10,000,000;

c.   Prejudgment interest;

c.      Reasonable attorney's fees and costs; and

d.      Such other and further relief as appears reasonable and just.

Plaintiffs request a jury trial.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 10th day of May, 2012.

**s/ Daliah Lugo Auffant**
**DALIAH LUGO AUFFANT**
USDC-PR #212312
Attorney for Plaintiffs

**LUGO AUFFANT LAW OFFICES**
500 Muñoz Rivera Ave.
Cond. El Centro II, Suite 1502
Hato Rey, Puerto Rico 00918

8420 Admiral Point
Winter Park, FL 32792

Tel: (787) 473-7354/ Fax (321) 422-0482
E-mail: perezlugolaw@gmail.com